## THE PEOPLE *vs.* BEIGLER.

The production by a corporate body of its act of incorporation, and proof of user under it, afford presumptive evidence of a full compliance with all the prerequisites of the statute essential to give operation and effect to its several provisions and conditions.

Where it appeared on the trial of a prisoner for arson in setting fire to his own dwelling, for the purpose of charging an insurance company with the loss, that the prisoner immediately after the fire consulted with and employed a lawyer to draw up the necessary papers for obtaining the insurance money, that he then stated his loss, that a notice was spoken of, and that the notice of loss served on the company the day after the fire, with the name of the prisoner subscribed, was in the lawyer's handwriting; *held*, that this evidence of the employment of the lawyer to give the notice of loss was sufficient to warrant the judge in admitting the notice, and submitting to the jury the question of the lawyer's authority to give such notice.

The policy of insurance contained the usual clause vacating the policy in case of assignment of it without insurers' consent. *Held*, that a general assignment by the insured of all personal property to pay creditors, did not render the policy void.

THE prisoner was indicted at the Monroe general sessions for the crime of arson in setting fire to his own dwelling, for the purpose of charging the insurance company with the loss. The policy covered an insurance of household furniture and the personal property in the dwelling to the amount of $6000.

After an argument and issue in the sessions, the court by an order entered in their minutes sent the indictment to the court of oyer and terminer for trial, and which was afterwards brought into the supreme court by certiorari, and the venire changed to the county of Genesee, where it was tried at the circuit in February, 1844, and the prisoner convicted of arson in the third degree.

In the course of the trial the counsel for the people intro-

duced an act of the legislature of the state of Pennsylvania, passed April 15, 1835, incorporating an insurance company, called "The Spring Garden Fire Insurance Company of the County of Philadelphia."

The agent of the company at Rochester proved that he had been an agent there some eight years; and had issued a great number of policies during that time, which had been previously signed by the president and secretary; that the company had paid various losses that had occurred on policies thus issued by the witness by countersigning them as agent. That he had corresponded frequently with the officers of the company in the course of his agency, and had been in the principal office at Philadelphia. That he had received some four or five hundred letters from the secretary on the business of the company during the period mentioned.

The counsel for the prisoner objected to the admission of the act of incorporation, on the ground that the conditions of the second section requiring the commissioners therein named, or a majority of them, to certify certain things to the governor, had not been proved. The objection was overruled, and the act of incorporation admitted.

The counsel for the people then offered in evidence the original policy of insurance issued to the prisoner May 9, 1843, signed by the president and secretary and countersigned by the agent, which was objected to for the reason assigned above against the admission of the act of incorporation, but this was also overruled, and policy admitted.

It appeared further in evidence, that the prisoner immediately after the happening of the fire called upon judge Chapin, and urged him to make out the papers for the purpose of obtaing the insurance money under the policy, saying that his loss was about $2600. That a notice was spoken of. The prisoner came into the office several times in the course of the day and consulted Judge C. on the subject.

A notice to the company of the loss, dated the 2d of November (the fire having occurred on the evening of the 1st), with the name of the prisoner subscribed, all in the handwriting of Judge Chapin, and which had been sent to the district attorney by the agent, was then produced; it was

objected to on the ground that proof of the authority of Judge Chapin was insufficient; but the objection was overruled, and paper admitted.

It was proved, in the course of the trial, that the prisoner had made a general assignment of all his personal property to one Ch. Frost and Ch. G. McKnight in trust to pay his debts, returning to him the overplus, if any remained, after payment of said debts, which was dated 21st June, 1843. This, it was urged by the prisoner, rendered void the policy; which was overruled.

The above statement contains all the facts brought out in the progress of the trial, upon which any questions of law had been raised and decided by the circuit judge, and which are brought before this court for review.

*By the Court*, NELSON, Ch. J. 1. By the second section of the act incorporating the Spring Garden Insurance Company it is provided, that when the whole number of shares in the capital stock shall have been subscribed, the commissioners shall certify to the governor the names of the subscribers, and number of shares by them subscribed, respectively, and the governor shall thereupon issue letters patent, &c., erecting said subscribers into a body politic and corporate, &c.

The objection to the admission of the act of incorporation, and also of the policy of insurance, made upon the trial, was that the condition contained in this section, requiring the commissioners to certify as above to the governor, had not been proved; and hence no legal evidence of the incorporation of the company, and, therefore, no existing body that could be defrauded by reason of the prisoner setting fire to the subject insured.

The answer is, that according to a series of cases heretofore decided in this court, the production of the act of incorporation, and proof of user under it by the corporate body, afford presumptive proof in the first instance of the fact of incorporation; in other words, of a full compliance with all the prerequisites of the statute essential to give operation and effect to its several provisions and conditions

(*Wood* v. *The Jefferson Co. Bank*, 9 Cow., 194; *Fire Department of N. Y.* v. *Kip*, 10 Wend., per Savage, Ch. J.; *Utica Ins. Co.* v. *Cadwell*, 3 id., 296; *Bank of Michigan* v. *Williams*, 5 id., 478. *S. C.* in error, 7 id., 539.)

This is, also, the rule of evidence adopted in other states upon the same subject. (*Grays* v. *Turnpike Co.*, 4 Rand. R., 578; *Hagerstown Turn. Road Co.* v. *Creeger*, 5 Harr. & Johns., 122; Angel & Eames, 380.)

2. The evidence in the case, of the employment of Judge Chapin to give the preliminary notice to the company of the loss was, undoubtedly, sufficient to warrant the court in admitting the written notice offered, and submitting the question of authority to the jury. The proof, indeed, was quite full and satisfactory on the point, and fully justified the finding.

3. The following clause is found in the policy, namely: "The interest of the assured in this policy is not assignable, unless by consent of this corporation, manifested in writing; and, in case of any transfer or termination of the assured, either by sale, or otherwise, without such consent, this policy shall from thenceforth be void and of no effect." A similar clause will also be found in one of the conditions. The provision refers, exclusively, to an assignment or transfer of the policy itself; and not of the subject matter, or property insured (*Smith* v. *Saratoga M. F. Ins. Co.*, 1 Hill, 497; *Lazarus* v. *Commonwealth Ins. Co.*, 19 Pick., 81.; *S. C.*, 5 id., 76; 1 Phillips on Ins., chap. 1, §7, p. 34, ed. 1840.)

Nor does the assignment of the property insured carry along with it the policy, as an incident thereto. (1 Phillips, 38, and cases.)

We have looked, attentively, into the affidavits for and against the motion for a new trial, founded upon the alleged irregularities of the jury; and are perfectly satisfied that they afford no ground that will justify our interference.

The charge that the jury indulged in the use of ardent spirits in the course of the trial, is completely rebutted; and the two cases of the absence of jurors satisfactorily explained. In a word, all the imputations attempted with so much apparent industry to be fixed upon the conduct of the

jurors, severally, throughout the trial, are satisfactorily explained and refuted. Most of them turn out on investigation to be altogether unfounded in fact; whilst other acts, of themselves of the most innocent and harmless character, are perverted and magnified in a most extrordinary, if not unwarrantable manner. I regret to see that some of the constables attending upon the jury have allowed themselves to be improperly used upon the occasion of getting up some of these unfounded and fabricated charges. One of them, at least, has undertaken to give detached parts of the consultations of the jury after they had retired to deliberate on their verdict, and which turn out to have been altogether a misapprehension on his part.

Some of the deponents have made affidavits on both sides, and taken back and explained away pretty much all the material matters stated in the first instance, on behalf of the motion.

We are all of opinion that there is no ground either in the law of the case, or arising out of the motion founded upon alleged irregularities of the jury, for a new trial.

New trial denied.